**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 14-CIV-61791-BLOOM/Valle**

CARL R. EADS, individually and
as personal representative of the Estate
of Leanne Eads,

       Plaintiff,

v.

ALLSTATE INDEMNITY COMPANY,

       Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court upon Defendant Allstate Indemnity Company's Motion to Dismiss, ECF No. [4]. The Court has reviewed the Motion, all opposing and supporting filings, and the record in this case, and is otherwise fully advised in the premises. For the reasons that follow, the Court now denies Defendant Allstate's Motion.

## I. BACKGROUND[1]

On October 27, 2003, Leanne Eads was stopped at the intersection of Copans Road and North Dixie Highway in Broward County, Florida, when the vehicle she occupied was involved in a multi-vehicle accident. ECF No. [1-3] at ¶¶ 8, 10-11. The accident was caused by the negligent operation of a 2002 Chevrolet Cavalier driven by Frederick Feldtmann, who was operating the vehicle with the permission and consent of Maria Lardani, the owner of the vehicle. *Id.* at ¶ 9. As a result of the accident, Mrs. Eads suffered severe and permanent injuries.

---

[1] The facts are garnered from Plaintiff's Amended Complaint contained within the Notice of Removal. *See* ECF No. [1-3].

*Id.* at ¶ 11.   At the time of the incident, Ms. Lardani's Cavalier was insured by Defendant Allstate Indemnity Company ("Allstate") through a motor vehicle liability insurance policy, Policy No. 941057263 (the "Policy").   *Id.* at ¶ 7.   Ultimately, the accident resulted in seven claims for personal injury.  *Id.* at ¶ 15.

Pursuant to the Policy, Allstate agreed to pay for damages on behalf of the insureds in the sum of $10,000 per person and $20,000 per occurrence.  *Id.* at ¶ 13.   According to Plaintiff, Allstate arbitrarily "and without considering the merits of the respective claims," simply divided the total motor vehicle coverage of $20,000 by the number of claims (7), and paid six of the seven claimants an amount equal to their share, or $2,857.00.  *See id.* at ¶ 16.   Further, Plaintiff contends that Allstate failed to investigate the claims arising under the policy and make further evaluations of the loss actually sustained, breaching its duty of good faith to the insureds.  *See id.* at ¶¶ 17-18, 21.   Based on this allegedly capricious decision, Plaintiff opines that Allstate acted in its own self-interest, failed to reasonably settle the claims, and exposed the insureds to excess judgments.  *See id.* at ¶¶ 18-19, 22.   Consequently, on June 23, 2005, Plaintiff Carl Eads and Leanne Eads[2] commenced an action in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, seeking damages for the injuries suffered as a result of the accident. *Id.* at ¶ 20.   During the pendency of the state court action, Allstate failed to allow the insureds to negotiate a settlement.  *Id.* at ¶  .   The repercussions of Allstate's willful failure to properly evaluate, defend, and settle Plaintiff's state court claim were substantial.  *See id.* at ¶ 24.   On April 25, 2010, after a jury trial, Plaintiff obtained a judgment against Maria Lardani and Frederick Feldtmann for $308,000.00, plus post judgment interest and costs.  *See id.* at 44-45.

---

[2] Unfortunately, Leanne Eads died of an illness unrelated to the motor vehicle accident at issue prior to the initiation of the instant litigation.  *See* ECF No. [1-3] at ¶ 20.

Presently, Plaintiff brings an action for common law bad faith (Count I) and statutory bad faith pursuant to § 624.155, Florida Statutes (Count II), seeking damages stemming from the aforementioned judgment. *See id.* at ¶¶ 24-30. In response, Allstate asserts that Count II of Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. *See* ECF No. [4]. The Court disagrees.

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the

non-moving party, and all facts alleged by the non-moving party are accepted as true.").  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).  While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Allstate essentially presents four reasons as to why Count II of the Amended Complaint must be dismissed.  *See* ECF No. [4].  First, Allstate contends that Plaintiff's civil remedy notice is substantively deficient, lacking the requisite specificity.  *See id.* at 4-6.  In the alternative, Allstate asserts that it had no legal obligation to pay the sums Plaintiff now seeks as those sums were above and beyond those required by the Policy.  *Id.* at 6.  Third, Allstate maintains that the civil remedy notices are invalid because no opportunity to cure the purported errors was given. *Id.* at 6-7.  Finally, Allstate avers that Plaintiff's Amended Complaint constitutes a "shotgun pleading." *Id.* at 8-9.  The Court addresses these issues in turn.

#### A.    The Civil Remedy Notices Are Sufficiently Specific

In its pertinent part, § 624.155, allows an individual to bring a civil action against an insurer when the individual has been damaged by the insurer, as a result of, *inter alia*, "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should

have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." *See* Fla. Stat. § 624.155.  Before any litigation under this cause of action may be commenced, a plaintiff must provide the insurer with sixty (60) days written notice of the violation.  *See id.* at (3)(a).  *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000) ("We find that the requirements of written notice to the Department of Insurance and the insurer are conditions precedent to bringing an action under subdivision (1)(a) or (b)."); *Allstate Ins. Co. v. Clohessy*, 32 F. Supp. 2d 1328, 1333 (M.D. Fla. 1998) ("[The notice requirement] is, without a doubt, a condition that must be satisfied in order for one to perfect the right to sue under the statute.").   The statute further provides that this civil remedy notice ("CRN") must state with specificity the following:

1.  The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

2.  The facts and circumstances giving rise to the violation.

3.  The name of any individual involved in the violation.

4.  Reference to specific policy language that is relevant to the violation, if any.  If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

5.  A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

*Id.* at (3)(b).  If the alleged violation is remedied during the 60-day period, the plaintiff's action is barred: "No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."  *Id.* at (3)(d).  Thus, the statute provides a 60-day period which allows the violating insurer to "cure" the error, the purpose of which is to "encourage payment of the underlying claim, and avoid unnecessary bad faith litigation."  *See id*;

*Talat Enterprises*, 753 So. 2d at 1282 (quoting *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*,
952 F. Supp. 773, 778 (M.D. Fla. 1996)).  According to the Florida Supreme Court, the statute is
to be "strictly construed."  *Talat Enterprises*, 753 So. 2d at 1283 (citation omitted).

 Allstate contends that the CRNs are inadequate because they fail to indicate what action
Plaintiff wished Allstate to take in order to cure the alleged violation.  Plaintiff submitted three
CRNs.  *See* ECF Nos. [4-1], [4-2], and [4-3].  Under the section requesting the "facts and
circumstances giving rise to the insurer's violation," the first two CRNs assert:

> There were 7 claims made as a result of the accident.  Without a
> proper investigation into the liability and damages of the claimants,
> Allstate Indemnity Company arbitrarily decided to settle all 7
> claims by dividing the $20,000.00 policy limits for the claim by 7
> and paid 6 of the claimants $2,857.00 each, leaving only $2,857.00
> to offer to the Eads to settle their claim.  The Eads were the only
> claimants who sustained serious damages.  The other claimants
> damages were minor if at all and it was not reasonable to expect
> the Eads to accept the same settlement amount as the other
> claimants.  The Eads filed suit against Allstate's insureds, Maria
> Lardani and Frederick Feldtmann, and obtained a judgment in
> excess of $300,000.00 dated April 26, 2010 in Case No: 05-09478
> (03).  During the litigation, Allstate refused to allow their insureds
> to negotiate a settlement and threatened to void [] the motor
> vehicle insurance policy if their insured attempted any such
> settlement.  Allstate breached its fiduciary duty to act in good faith
> and to settle the action within policy limits when it was reasonable
> to do so and exposed its insureds to the excess policy judgment.
> Allstate failed to notify its insureds of the basis for failing to settle
> the case.

ECF No. [4-1] at 3.  Plaintiff's third CRN is merely a corrective one, simply adding further
details related to the state court judgment:

> The Eads filed suit against Allstate's insureds, Broward County
> Circuit Court Case No: 05-09478 (03) and obtained a judgment
> dated April 26, 2010 in excess of $300,000.00 (Carl Eads, as
> personal representative of the Estate of Leanne Eads in excess of
> $268,000.00 and Carl Eads in excess of $40,000.00).

ECF No. [4-3] at 4.  Responding to these notices, Allstate repeatedly objected, noting that the CRNs were invalid as a matter of law, as "no cure [was] stated or implied and therefore Allstate is unable to determine what action it may take to cure the alleged violations."  *See* ECF No. [4-1] at 4; ECF No. [4-2] at 4; ECF No. [4-3] at 5.  Generally, courts have indicated that the statute "requires the prospective claimant to advise the insurer of precisely how the circumstances giving rise to the violation may be corrected."  *Rousso v. Liberty Surplus Ins. Corp.*, No. 10-CV-20554, 2010 WL 7367059, at *3 (S.D. Fla. Aug. 13, 2010) (citing *Heritage Corp. of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 580 F. Supp. 2d 1294, 1299 (S.D. Fla. 2008); *316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1187, 1193 (N.D. Fla. 2008); *Valenti v. Unum Life Ins. Co. of Am.*, 2006 WL 1627276, at *2 (M.D. Fla. June 6, 2006)) (internal formatting removed).  In support of this contention, Allstate directs the Court to *Heritage Corp. of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 580 F. Supp. 2d 1294 (S.D. Fla. 2008).

In *Heritage*, the Court was presented with a CRN it ultimately deemed insufficient for want of specificity.  *See Heritage Corp.*, 580 F. Supp. 2d at 1299-1300, *aff'd sub nom. Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 361 F. App'x 986 (11th Cir. 2010).  Like Allstate's assertion herein, the CRN in *Heritage Corp.* "did not specify what sort of action it wanted [defendant] to take in response."  *Id.*  However, in finding that the CRN was "vague" and "'shotgun' in nature," the Court also pointed to the fact that the CRN did not distinguish between the various claimants, failed to specify which subsections of the statute were at issue, did not address which policies were implicated, and neglected to explain the damage resulting from the defendant's alleged statutory violations.  *See id.*  Based on the multitude of transgressions, the Court held that the CRN lacked the requisite specificity, noting that the ambiguity of the CRN forced the defendant to play a "'guessing game' as to what, and how, to

cure within 60 days." *Id*; *see also Valenti v. Unum Life Ins. Co. of Am.*, 2006 WL 1627276, at *2 (M.D. Fla. June 6, 2006) (holding that a "you denied my claim" accusation which required the insurer to play a "guessing game with the insurer attempting to correctly guess what errors the insured claimed it made in the claims handling process" was not what the legislature contemplated when establishing the CRN). The Court agrees that Plaintiff's CRN do not explicitly indicate what action Allstate must take to cure the alleged violations. However, *Heritage Corp.* is factually inapposite; Plaintiff's CRNs contain significantly more specificity than the one placed before the Court in *Heritage Corp.*

Contrary to Allstate's assertion, the Court is of the opinion that Plaintiff's CRNs have sufficiently placed Allstate on notice of the claims presented. In *King v. Gov't Employees Ins. Co.*, the Middle District of Florida held a CRN to be satisfactory where it identified the provision allegedly violated, the purpose of the notice, references to the policy language, and contained descriptions of the factual circumstances forming the basis of the claim. *See King v. Gov't Employees Ins. Co.*, 2012 WL 4052271, at *7-8 (M.D. Fla. Sept. 13, 2012). In so holding, the Middle District held that the circumstances did not present "a case where the insurer is left to play the 'guessing game' as to what cure the [plaintiff] is seeking." *Id.* at *8. Similarly, Plaintiff's CRNs here contain references to the specific statutory provisions at issue, as well as a detailed recitation of the facts and circumstances leading to the excess judgment imposed on the insureds. Clearly, the statute does not require a CRN to indicate the amount owed. *See Porcelli v. OneBeacon Ins. Co.*, 635 F. Supp. 2d 1312, 1318 (M.D. Fla. 2008) (noting that "a specific cure amount is not necessary to validate a Civil Remedy Notice"); *see also Bullard Bldg. Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2009 WL 2423436, at *10 (M.D. Fla. Aug. 4, 2009) ("Fla. Stat. § 624.155(3)(b) does not require an insured to indicate the amount owed.");

*Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, 2008 WL 3889577, at *3 (S.D. Fla. Aug. 20, 2008) ("Although it is clearly the purpose of the notices to alert an insurer of its violations, Florida's statute does not require an insured to indicate the amount owed . . . ."). As the facts are presented, it does not take a stretch of the imagination to deduce what Plaintiff seeks—Allstate's alleged violation resulted in a specific, quantifiable damages amount, one well in excess of the insured's policy limits. *See generally Altheim v. GEICO Gen. Ins. Co.*, 2011 WL 161050, at *4 (M.D. Fla. Jan. 18, 2011) (noting that a claim based upon an unsatisfactory settlement offer presented a common sense cure possibility—simply increase the amount offered to settle the plaintiff's claim); *see also Longpoint Condo. Ass'n v. Allstate Ins. Co.*, 2005 WL 1315810, at *2 n.3 (N.D. Fla. June 2, 2005) ("The statutorily-required notice must be made with sufficient specificity to allow the insurer to understand and, if it chooses, to cure the violation."). Furthermore, Allstate has not presented evidence that the Department of Insurance returned the CRNs for lack of specificity. *See* Fla. Stat. § 624.155(3)(c) ("Within 20 days of receipt of the notice, the department may return any notice that does not provide the specific information required by this section, and the department shall indicate the specific deficiencies contained in the notice."). This evidence, or lack thereof, supports the assertion that the CRN contained the requisite specificity. *See King*, 2012 WL 4052271, at *7-8 (citing *Porcelli*, 635 F. Supp. 2d at 1318) (stating that "[t]he Department's acceptance of a CRN serves as evidence that the CRN has sufficient specificity to provide the insurer with notice of the violation and start the 60–day clock"). Finally, Plaintiff's CRNs are comprehensive, detailing the five matters required by § 624.155(3)(b), and providing complete and specific answers in each section of the CRN form. For these reasons the Court declines to dismiss Plaintiff's claim for lack of pre-suit notice under § 624.155(3)(b).

**B.      Allstate May Be Obligated to Pay Extra-Contractual Sums**

Allstate further contends that even if the CRNs contained sufficient specificity, Plaintiff's request to pay the state court judgment would not have presented the opportunity to cure as such judgment was in excess of the $20,000.00 bodily injury liability limits of the Policy.  *See* ECF No. [4] at 6.  This assertion is plainly contrary to the law.  "The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer *and may include an award or judgment in an amount that exceeds the policy limits*."  Fla. Stat. § 624.155(8) (emphasis added).  Indeed, the Florida Supreme Court has opined that "the essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim."  *Macola v. Gov't Employees Ins. Co.*, 953 So. 2d 451, 458 (Fla. 2006) (quoting *Cunningham v. Standard Guar. Ins. Co.*, 630 So. 2d 179, 181 (Fla. 1994)).  In the case of a third-party allegation of bad faith, an insurer must pay the claim in order to cure, "sometimes in excess of policy limits."  *Talat Enterprises*, 753 So. 2d at 1282 (quoting *Talat Enterprises*, 952 F. Supp. 773 at 778); *see also Soto v. Geico Indem. Co.*, 2014 U.S. Dist. LEXIS 96563, at *6 (M.D. Fla. July 16, 2014) (quoting State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 58 (Fla. 1995)) (""[I]f an insurer [is] found to have acted in bad faith, the insurer . . . ha[s] to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits.").  Accordingly, Allstate's argument that cure would obligate payment in excess of the policy limits and was therefore not legally required is without merit.[3]

---

[3]  Allstate fails to acknowledge the distinction between a first-party bad faith action and one pursued by a third-party.  While it is true that, generally, "[i]n the context of a first-party insurance claim, the contractual amount due the insured is the amount owed pursuant to the

**C.      The Timing of the Civil Remedy Notices Does Not Preclude Plaintiff's Claim**

The excess judgment in this matter was issued on April 25, 2010.  ECF No. [1-3] at 44-45.  The CRNs were filed on April 23 and 24, 2014, one day short of a full four years after the judgment.  *See* ECF No. [4-1] at 1; ECF No. [4-2] at 1; ECF No. [4-3] at 1.  Based on this temporal discrepancy, Allstate asserts that it never had an opportunity to settle the underlying claim as judgment had already been rendered against the insureds by the time the CRNs were filed.  It is indisputable that the notice requirement is intended to allow an insurer to "cure" the alleged violation.  *See Dellavecchia v. GEICO Gen. Ins. Co.*, No. 8:09-CV-2175-T-27TGW, 2011 WL 53029, at *3 (M.D. Fla. Jan. 7, 2011) (citing *Talat Enterprises*, 753 So. 2d at 1282–83).  However, Allstate's argument is unpersuasive and illogical.  The fact that judgment was entered against the insureds in excess of the meager $2,857 Allstate initially offered to Plaintiff is evidence of Allstate's bad faith.  More critically, the "cure" period runs 60 days after the filing of the CRN.  *See* Fla. Stat. § 624.155(3)(d) ("No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected."); *see also Talat Enterprises*, 753 So. 2d at 1283 ("It also is plain that the sixty-day period was a time in which the insurer could act to "cure" a violation of subdivision (1)(a) or (b) about which it had been served notice.").  At no point does the statute purport to include a limitations period pertaining to when a potential plaintiff may file a CRN.  Cited authority does not support this proposition.  *See Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779 (Fla. 5th DCA 2003) (citing *Talat Enterprises*, 753 So. 2d at 1284) (indicating that the last opportunity to cure is the sixty-

---

express terms and conditions of the policy," third-parties may obtain judgments in excess of the policy limits.  *See Talat Enterprises*, 753 So. 2d at 1282-83; *see also Laforet*, 658 So. 2d at 60 (examining the different damages available to first and third-party claimants, and noting that damages in a third-party action "would include the amount of a judgment in excess of policy limits").  Therefore, the authority submitted by Allstate is inapplicable.

day window under the statute).  The outcome implicated by Allstate's interpretation of the statute is untenable, resulting in the arbitrary imposition of a limitations period on when a plaintiff may pursue a bad faith claim.  Allstate was afforded sixty days in which it could have remedied the situation; that is all that is required under the statute.

    **D.**       **Plaintiff's Complaint Is Not a "Shotgun Pleading"**

Lastly, Allstate disparages the format of Plaintiff's Amended Complaint, alleging that it improperly incorporates another count.  This Court and the Eleventh Circuit has warned litigants that shotgun pleadings tend to "impede the orderly, efficient and economic disposition of disputes as well as the court's overall ability to administer justice."  *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1336 (S.D. Fla. 2010) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1128–31 (11th Cir. 2001)); *see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 n.10 (11th Cir. 2002) (expounding the various ways in which shotgun pleadings harm the courts and other litigants).  By definition, a shotgun pleading does not comport with Rule 8's requirement of a short and plain statement of the claim.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  Generally, this type of pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."  *Strategic Income Fund*, 305 F.3d at 1295.

In the instant case, Plaintiff's Amended Complaint does not compartmentalize the general allegations into a distinct section, but rather, Count I contains the entirety of the allegations forming the factual basis of both Count I and Count II.  *See* ECF No. [1-3]. While this format is neither artful nor typical, it hardly constitutes the type of pleading generally considered to be a shotgun pleading.  *See, e.g., Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding

complaint to be the "quintessential 'shotgun' pleading" where the fifty-eight page complaint charged all fourteen defendants in each count, was replete with ambiguities, and contained myriad pages of "rambling irrelevancies"). Additionally, the Amended Complaint complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(1) (requiring a pleading to be concise and direct); Fed. R. Civ. P. 10(b) (demanding that a party "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances"). The allegations in the Amended Complaint are clear and concise; Allstate cannot reasonably assert that the format of the Amended Complaint obviates its ability to adequately respond.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that Defendant Allstate Indemnity Company's Motion to Dismiss, **ECF No. [4]**, is **DENIED**. Allstate shall file a response to Plaintiff's Amended Complaint no later than December 1, 2014.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 17th day of November 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

13